**Tim WITHERSPOON, Plaintiff–
Counter–Defendant–
Appellant,**

v.

**Dennis RAPPAPORT and Dennis Rappaport Productions, Defendants–
Counter–Claimants–Appellees.**

No. 02–9039.

United States Court of Appeals,
Second Circuit.

May 15, 2003.

Richard D. Emery, Emery Cuti Brinckerhoff & Abady PC, New York, NY, for Appellant.

Jethro M. Eisenstein, Profeta & Eisenstein, New York, NY, for Appellee.

Present: OAKES, WINTER, and KATZMANN, Circuit Judges.

## SUMMARY ORDER

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 15th day of May, two thousand three.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and it hereby is **AFFIRMED.**

Plaintiff–Appellant Tim Witherspoon appeals a judgement of the district court entered after the court granted a Rule 50 motion and set aside a jury verdict that found defendants Dennis Rappaport and Dennis Rappaport Productions ("DRP") liable to him on his claims for breach of contract and breach of the implied covenant of good faith and fair dealing. For the reasons that follow, we affirm the decision of the district court.

This Court reviews *de novo* a decision on a Rule 50 motion for judgment as a matter of law. *Patrolmen's Benevolent Ass'n of City of New York v. City of New York,* 310 F.3d 43, 50 (2d Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 2076, 155 L.Ed.2d 1061 (2003) (No. 02–1321). "The motion should be denied unless, viewed in the

light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Id.* at 50–51 (quotations omitted).

■ Witherspoon cannot, as a matter of law, establish a breach of contract. The contract at issue contains no express requirement that DRP maintain a New York license, nor does it contain any mention of a requirement that any fight be promoted in the state of New York. The agreement called for DRP to promote fights for Witherspoon, and that is what DRP did – four times between October 1995 and May 1996. In the course of promoting those fights, DRP assigned the rights to another promoter, but it was expressly permitted to do so by the contract.

Witherspoon argues that, notwithstanding the fact that there was no express requirement in the contract that DRP be licensed by New York or promote fights in New York, DRP was nonetheless implicitly obligated to comply with New York's regulations at all times because of the language in the choice of law clause that reads "[t]his Agreement shall be in all respects be governed ... in accordance with the laws of the State of New York applicable to contracts to be fully performed therein." This argument is contradicted by the New York courts' decisions in *Quartey v. AB Stars Productions, S.A.,* 260 A.D.2d 39, 697 N.Y.S.2d 280 (1st Dep't 1999), and *Norris v. Don King Productions, Inc.,* 271 A.D.2d 377, 706 N.Y.S.2d 246 (1st Dep't 2000). In both of those cases, the Appellate Division held that technical violations of New York regulations would not void a contract to promote a fight outside of New York. *See Norris,* 271 A.D.2d at 379, 706 N.Y.S.2d 426 ("The choice-of-law provision

in such circumstances would simply govern the interpretation of the contract itself, and would not mean that the [New York] rules [would apply to all fights]."); *Quartey,* 260 A.D.2d at 43, 697 N.Y.S.2d 280 ("The insertion of a New York choice-of-law provision in the ... agreement had no effect whatsoever on fights taking place outside New York State.") *see also Zwirn v. Galento,* 288 N.Y. 428, 442–43, 43 N.E.2d 474 (1943) (holding that New York regulations governing boxing had no effect on fights scheduled outside of New York). The Appellate Division's conclusion in *Norris* is especially persuasive here because the language of the choice of law clause in the *Norris* contract was identical to the one at issue in this case.

Witherspoon's other argument is that the provision of N.Y. Unconsol. L. § 8907 that reads "no ... corporation or person shall be permitted to participate, either *directly or indirectly,* in any boxing or sparring match or exhibition, or the holding thereof ... unless such corporation or persons shall have first procured a license from the commission" (emphasis added), and other similar provisions, indicates that Rappaport's participation by assignment violates New York law. Witherspoon cites no authority for this reading of Section 8907 and related statutes, however, and it is an unconvincing reading of the statute. *Cf. Zwirn,* 288 N.Y. at 432, 43 N.E.2d 474 (New York statute, including § 8907, have no effect on match planned for outside of New York state).

■ The jury also found liability on Witherspoon's claim that DRP violated the implied covenant of good faith and fair dealing; it was on this claim that the jury awarded damages. An implied covenant of good faith and fair dealing inheres in every New York contract. *See Travellers Int'l., A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1575 (2d Cir.1994); *Dalton v.*

*Educ. Testing Serv.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995) (citing *Van Valkenburgh, Nooger & Neville v. Hayden Pub. Co.*, 30 N.Y.2d 34, 45, 330 N.Y.S.2d 329, 281 N.E.2d 142 (1972)). The scope of potential liability for breach of the covenant is quite narrow: such a breach cannot give rise to additional liability if it merely replicates the liability for breach of the underlying contract, *see Apfel v. Prudential–Bache Secs., Inc.*, 183 A.D.2d 439, 440, 583 N.Y.S.2d 386, 387 (1st Dep't 1992), nor can it create new contractual rights or impose additional duties. *Murphy v. Am. Home Prods., Corp.*, 58 N.Y.2d 293, 304, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983); *see also Warner Theatre Assocs. v. Metropolitan Life Ins. Co.*, No. 97–4914, 1997 WL 685334, at *3 (S.D.N.Y., Nov.4, 1997), *aff'd*, 149 F.3d 134 (2d Cir. 1998).

Breach of the covenant of good faith and fair dealing occurs instead where the contract is not technically breached, but one party has acted to destroy or injure the right of the other party to receive the benefit of the contract. *See Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F.Supp.2d 711, 735–36 (S.D.N.Y.2000), *aff'd*, 294 F.3d 383 (2d Cir. 2002); *Chase Manhattan Bank, N.A. v. Keystone Distribs., Inc.*, 873 F.Supp. 808, 815–16 (S.D.N.Y.1994). DRP's misrepresentation about the status of its license did not injure Witherspoon's ability to receive the benefits of the contract, as there was no contractual requirement that DRP be licensed in New York. Witherspoon's argument as to good faith is entirely premised upon the existence of a contractual obligation that DRP be licensed by New York. *See* Brief for Plaintiff–Appellant at 43–44 ("Rappaport had an implied obligation ... to be honest when asked about the true status of [Rappaport's] license."). As no such obligation exists, no breach of the covenant of good faith and fair dealing exists either.

We have considered all of appellant's arguments. The judgment of the district court is **AFFIRMED**.