**Jay M. WOLFF, David Bliss, Tim Barber, and Steve O'Brien, Plaintiffs,**

v.

**RARE MEDIUM, INC., ICC Technologies Inc. n/k/a Rare Medium Group, and Rare Medium Texas I, Inc., Defendants.**

**No. 01 Civ. 4279(VM).**

United States District Court, S.D. New York.

Nov. 13, 2001.

Andrew L. Morrison, Jonathan Young, Reed, Smith, L.L.P., New York City, for Jay M. Wolff, plaintiffs.

---

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiffs Jay M. Wolff, David Bliss, Tim Barber, and Steve O'Brien (hereinafter collectively referred to as "Plaintiffs") brought this action against defendants Rare Medium, Inc., ICC Technologies Inc. n/k/a Rare Medium Group, and Rare Medium Texas I, Inc. (hereinafter "Rare Medium"), alleging breach of contract, breach of the implied obligation of good faith and fair dealing, tortious interference with contract, and tortious interference with prospective business advantage. Plaintiffs, who are former principal shareholders of Big Hand Inc. (hereinafter "Big Hand"), base their claims upon an Agreement and Plan of Merger (hereinafter the "Merger Agreement") between Big Hand and Rare Medium.

Rare Medium moved under Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief could be granted. In an order dated October 31, 2001, the Court granted Rare Medium's motion with leave to re-plead. For the reasons described below, the Court's October 31, 2001 Order is amended by this Decision and Order and the complaint is dismissed with leave to re-plead.

## I. FACTUAL BACKGROUND

In April 1999, Plaintiffs entered into a Merger Agreement with Defendants to sell Big Hand in exchange for shares of Rare Medium's stock. The Merger Agreement contained several time-sensitive restrictions on Plaintiffs' ownership rights in the exchanged stock. For a period of twelve months after the merger, Plaintiffs were prohibited from selling or entering into any transaction related to the Rare Medium stock that they received in the merger. In the subsequent period, from twelve months to eighteen months after the merger, Plaintiffs were permitted to enter into certain types of transactions related to the stock under a limited set of circumstances.

The exact nature of these transactions and circumstances are disputed here.[1]

Some time before the one year anniversary of the merger, Rare Medium's share price began to fall rapidly. As a result, soon after the one year anniversary, Plaintiffs sought to enter into certain transactions (hereinafter the "Attempted Transactions") with a third-party, Morgan Stanley, whereby the price of Plaintiffs' Rare Medium stock would "lock in" a designated price range. Compl. ¶ 32. Plaintiffs allege that they entered into a brokerage agreement (hereinafter the "Brokerage Agreement") with Morgan Stanley to engage in the Attempted Transactions. Morgan Stanley was aware of the restrictions on Plaintiffs' Rare Medium stock and requested that Rare Medium "authorize" the Attempted Transactions. Compl. ¶ 39.

Plaintiffs allege that Rare Medium knew that the Attempted Transactions were permitted under the Merger Agreement but intentionally misrepresented to Morgan Stanley that they were not, in an effort to protect Rare Medium's stock price. As a result of Rare Medium's alleged misrepresentation, Plaintiffs were unable to execute the Attempted Transactions with Morgan Stanley and were precluded from locking in a favorable price range for their Rare Medium stock.

## II. DISCUSSION

When deciding a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations of the complaint and must draw all reasonable inferences in favor of the plaintiff. *See City of Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). In order to avoid dismissal, plaintiffs must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." *Gebhardt v. Allspect, Inc.*, 96 F.Supp.2d 331, 333 (S.D.N.Y.2000). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

" '[T]he complaint is deemed to include any written instrument attached to it....' " *International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995). Here, the Merger Agreement is attached to the Complaint and the Court will consider this document in deciding the motion.

## A. BREACH OF CONTRACT

■ Under New York law, to establish a breach of contract a plaintiff must plead

---

1. The relevant portion of the Merger Agreement states: "Each of the Principals agrees that for a period of eighteen (18) months after the Effective Time of the Merger, such stockholder will not (i) sell, offer to sell, pledge, transfer or otherwise dispose of any shares of Parent Common Stock ... or (ii) engage in any transactions, ... the intent or effect of which is to reduce the risk of owning the shares of Parent Common Stock acquired hereunder (including by way of example and not limitation, engaging in put, call, short-sale, straddle or similar market transactions); provided, that, notwithstanding the foregoing after the one (1) year anniversary of the Effective Time, any Principal may enter into any of the foregoing transactions, except that, until such (18) month period has expired, no Principal ... shall sell, or enter into any transaction with respect to, any shares on the public market ... and provided, further that no Principal ... shall sell or otherwise transfer any such shares unless and until the transferee of such shares enters into a written agreement with [Rare Medium] agreeing to the restrictions contained in this Section...." Merger Agreement, Section 4.4(a) at p. 28.

the following elements: (i) the existence of a contract; (ii) breach by the other party; and (iii) damages suffered as a result of the breach. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245–46 (2d Cir.2000). In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue. *See Levy v. Bessemer Trust Co., N.A.*, No. 97 Civ. 1785, 1997 WL 431079, *5 (S.D.N.Y. July 30, 1997). "[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable [that party] to answer and prepare for trial." *Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.*, 10 F.Supp.2d 334, 344 (S.D.N.Y.1998) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988)). Although the pleading requirements are construed liberally, "[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader. If it fails to do so, a motion under Rule 12(b)(6) will be granted." *Id.* (quoting 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.1999)).

In this case, the complaint fails to provide Rare Medium notice of the contractual provision allegedly breached, or the nature of the breach; it states only that "The Attempted Transactions were clearly permitted and it was a breach of the Acquisition Agreement for Rare Medium to block them." Compl. ¶ 50. In their Memorandum of Law, Plaintiffs assert that Section 4.4(a) of the Merger Agreement provided Plaintiffs with a contractual right after one year to "enter into any of the previously restricted transactions, except an outright sale of [Rare Medium's] stock."[2] Pls.' Mem. of Law at 4. However, Plaintiffs have not identified any language in Section 4.4(a) of the Merger Agreement that obliged Rare Medium to represent to Morgan Stanley that it believed Plaintiffs' Attempted Transactions were permissible under the Merger Agreement.[3] *Cf. Lewis Tree Service, Inc., et al. v. Lucent Technologies, Inc., et al.*, No. 99 Civ. 8556, 2000 WL 1277303, *5 (S.D.N.Y. Sept.8, 2000) (dismissing breach of contract claim because plaintiffs failed to identify contractual provisions that defendant had breached); *Shah v. Wilco Systems, Inc.*, 126 F.Supp.2d 641, 653 (S.D.N.Y.2000) (same). Accordingly, Rare Medium's motion to dis-

2. Plaintiffs' quotation is incomplete; the Agreement provides that "after the one year anniversary . . . , any Principal may enter into any of the foregoing transactions, except that, until such eighteen month has expired, no Principal . . . shall sell *or otherwise transfer* any such shares unless and until the transferee of such shares enters into a written agreement with Buyer agreeing to the restrictions contained in this section 4.5." Merger Agreement at p. 28 (emphasis added).

3. Reviewing the Merger Agreement, it is unclear whether Plaintiffs had a right to enter into the Attempted Transactions with Morgan Stanley in the absence of a written agreement between Morgan Stanley and Rare Medium. If Plaintiffs' breach of contract claim depended merely on their alleged right to enter into the Attempted Transactions, it would be inappropriate to dismiss this claim on a Rule 12(b)(6) motion to dismiss. However, Plaintiffs here presume that Defendants interpreted the language of the Merger Agreement in a manner consistent with their interpretation. Based on this presumption, they allege that Rare Medium had an affirmative obligation to provide an opinion to Morgan Stanley that the Attempted Transactions were permissible. The Court finds neither plain language in the Merger Agreement nor facts alleged in the complaint to support their presumption about Rare Medium's interpretation of the Merger Agreement or to support the existence of an obligation on the part of Rare Medium to provide third parties with a particular opinion.

miss Plaintiffs' breach of contract claim is granted, and Plaintiffs are granted leave to re-plead the breach of contract claim to specify which provision in the contract they rely upon as requiring Rare Medium to authorize the Attempted Transactions.

## B. *BREACH OF THE OBLIGATION OF GOOD FAITH AND FAIR DEALING*

■ Plaintiffs' allegation of a breach of the obligation of good faith is duplicative of the cause of action for breach of contract since New York courts generally assume an obligation of good faith and fair dealing between parties to a contract. *See Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86, 91 (1983) (citing *Pernet v. Peabody Eng. Corp.,* 20 A.D.2d 781, 248 N.Y.S.2d 132, 135 (1st Dep't 1964)); *National Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.,* 922 F.Supp. 849, 855 (S.D.N.Y.1996). Furthermore, the obligation of good faith cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract. *See Granite Partners, L.P., et al. v. Bear, Stearns & Co. Inc., et al.,* 17 F.Supp.2d 275, 305 (S.D.N.Y.1998) ("Any purported duty of good faith cannot add to, detract from, or alter the terms of the contract itself."). Plaintiffs' separate claim for breach of the obligation of good faith is therefore dismissed as redundant. *See Apfel v. Prudential–Bache Sec.,* 183 A.D.2d 439, 583 N.Y.S.2d 386, 387 (1st Dep't 1992), *modified on other grounds and aff'd,* 81 N.Y.2d 470, 600 N.Y.S.2d 433, 616 N.E.2d 1095 (1993) ("cause of action alleging a breach of good faith is duplicative of a cause of action alleging breach of contract, since every contract contains an implied covenant of good faith and fair dealing").

## C. *TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS*

■ Under New York law, to establish a *prima facie* case of tortious interference with contract, a plaintiff must plead four elements: (1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of the contract, (3) defendant's "intentional inducement" of the third party to breach the contract, and (4) damages. *See Kronos, Inc. v. AVX Corp.,* 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289, 292 (1993). Phrased another way, the third element involves a defendant's "improper intentional interference with [ ] performance" of an existing contract. *Imtrac Industries, Inc. v. Glassexport Co.,* No. 90 Civ. 6058, 1996 WL 39294, *7 (S.D.N.Y. Feb.1, 1996) (quoting *Enercomp, Inc. v. McCorhill Publishing, Inc.,* 873 F.2d 536, 541 (2d Cir.1989)).

■ It is clear that Plaintiffs' complaint does not adequately plead a claim for tortious interference with contract. The complaint contains no allegations regarding Plaintiffs' rights and obligations under the Brokerage Agreement with Morgan Stanley, how Morgan Stanley breached the agreement, or how Rare Medium's conduct caused that breach. In addition, the complaint contains no specific allegations to support Plaintiffs' conclusory assertion that Rare Medium knew of Plaintiffs' Brokerage Agreement with Morgan Stanley.

Plaintiffs' claim for tortious interference is defective for another reason: the complaint fails to plead that Rare Medium used "wrongful means" to induce Morgan Stanley to breach the Brokerage Agreement with Plaintiffs. Under New York law, a tortious interference with contract claim must plead that a defendant used "wrongful means" to induce the third party to breach the contract. *See Guard–Life*

*Corp. v. S. Parker Manufacturing Corp.,* 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445, 448–49 (1980); *accord NBT Bancorp Inc., et al v. Fleet/Norstar Financial Group, Inc.,* 87 N.Y.2d 614, 641 N.Y.S.2d 581, 664 N.E.2d 492, 495–96 (1996). In *Guard–Life,* the New York Court of Appeals defined "wrongful means" to include "physical violence, fraud, or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract." *Guard–Life Corp.,* 428 N.Y.S.2d 628, 406 N.E.2d at 449.

Plaintiffs claim that Rare Medium knew that the Attempted Transactions were permitted under the Agreement. Compl. ¶ 38–39. They further allege that Rare Medium intentionally misrepresented the permissibility of the Attempted Transactions to Morgan Stanley in an attempt to protect its stock price. *Id.* Plaintiffs do not allege any facts to support their contention that Rare Medium believed that the Attempted Transactions were permissible under the Merger Agreement. Although Plaintiffs allege that Rare Medium's management "thought" that the Attempted Transactions were permissible (See Compl. ¶ 41), this Court, even on a motion to dismiss, is not required to accept conclusory allegations—particularly allegations such as those asserted here, characterizing or attributing a state of mind of another person. *See R.C.M. Executive Gallery Corp. v. Rols Capital Co.,* No. 93 Civ. 8571, 1997 WL 27059, *8 (S.D.N.Y. Jan.23, 1997) (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). As a result, the complaint fails to plead that Rare Medium used wrongful means to interfere with Plaintiffs' Brokerage Agreement with Morgan Stanley.

Accordingly, Rare Medium's motion to dismiss Plaintiffs' tortious interference with contract claim is granted, and Plaintiffs are granted leave to re-plead the claim to specify their rights under the Brokerage Agreement with Morgan Stanley, how the Brokerage Agreement may have been breached by reason of any wrongful means employed by Rare Medium, and any specific circumstances of Rare Medium's alleged misrepresentation to Morgan Stanley regarding the permissibility of the Attempted Transactions.

**D.  *TORTIOUS  INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE***

■   To establish a claim based on tortious interference with prospective business advantage Plaintiffs must allege: (1) business relations with a third party; (2) defendants' interference with those business relations; (3) that defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the relationship. *See Purgess v. Sharrock,* 33 F.3d 134, 141 (2d Cir.1994). Tortious interference with prospective business advantage requires "more culpable conduct on the part of the defendant" than tortious interference with contractual relations. *NBT Bancorp,* 641 N.Y.S.2d 581, 664 N.E.2d at 496. In this regard, the New York Court of Appeals has declared: "[G]reater protection is accorded an interest in an existing contract (as to which respect for individual contract rights outweighs the public benefit to be derived from unfettered competition) than to the less substantive, more speculative interest in a prospective relationship (as to which liability will be imposed only on proof of more culpable conduct on the part of the interferer)." *Id.*

■   Plaintiffs allege that Rare Medium interfered with their Brokerage Agree-

ment with Morgan Stanley by intentionally misrepresenting its views on the permissibility of the Attempted Transactions. Since the misrepresentation alleged to support this claim is identical to the misrepresentation alleged to support Plaintiffs' tortious interference with contract claim, it is dismissed for the foregoing reasons, with leave to re-plead.

## III. *CONCLUSION AND ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that the Court's Order on this matter dated 31 October 2001 is Amended to incorporate the discussion set forth in this Decision and Order; and it is further

**ORDERED** that defendant Rare Medium's motion to dismiss the complaint is GRANTED; and it is finally

**ORDERED** that Plaintiffs are granted leave to re-plead their claims within twenty days of the date of this Order.

**SO ORDERED.**